USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/25/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOSHUA LINER,

                Plaintiff,

      -v.-

BRIAN FISCHER, et al.,

                Defendants.
------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

11-CV-6711 (PAC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Paul A. Crotty, United States District Judge:**

      Plaintiff Joshua Liner filed this Section 1983 action alleging violations of his constitutional rights while he was a New York State prisoner. Liner, who was incarcerated when he filed the action but has since been released, was granted in forma pauperis ("IFP") status, allowing him to proceed without prepaying the filing fee. The remaining defendant in this action, Lawrence J. Wilcox, now moves to have the Court revoke that status, contending that Liner was not under an imminent threat of serious physical injury at the time he filed his complaint – as the Court had originally determined – and is therefore subject to the "three strikes" provision of the Prison Litigation Reform Act ("PLRA"). For the reasons that follow, I recommend that Wilcox's motion be granted. I further recommend that Liner be ordered either to pay the filing fee in full or submit a new IFP application within 30 days, failing which the claim against Wilcox should be dismissed.

1

USDC SDNY
DATE SCANNED 6/25/14

## I. BACKGROUND

### A. Procedural History

#### 1. First Motion to Revoke Liner's IFP Status

Liner filed his complaint on September 23, 2011 (Dkt. No. 1), and was granted IFP status on December 6, 2011 (Dkt. No. 5). On April 19, 2012, Defendants moved to revoke Liner's IFP status, contending that he had accumulated more than three strikes – i.e., three or more prior actions in federal court that had been dismissed as frivolous, malicious, or for failure to state a claim – and was therefore barred from filing further actions without prepayment of the fee under the PLRA, 28 U.S.C. § 1915(g). Memorandum of Law in Support of First Motion to Revoke Plaintiff's IFP Status (Dkt. No. 16), 2-3. Defendants further argued that Liner did not allege facts establishing that he was in "imminent danger of serious physical injury," an exception under the PLRA that would allow him to maintain an otherwise revocable IFP status. Id. at 4. Liner consequently filed an amended complaint on April 23, 2012 in which he alleged, among other things, that Wilcox, a nurse practitioner at Lakeview Shock Incarceration Correctional Facility ("Lakeview"), had been deliberately indifferent to Liner's chronic back pain and had issued only two of the three bottles of eye drops that Liner's ophthalmologist had recommended to treat his glaucoma. Amended Complaint ("Am. Compl.") (Dkt. No. 19), 1, 10.[1]

Reviewing Liner's previous federal court actions, the Court found that he had accumulated four applicable strikes; however, it denied the motion to revoke because Liner sufficiently alleged claims relating to deficient medical treatment – in particular, the potential for total loss of his vision – that implicated the PLRA's "imminent danger" exception. Liner v.

---

[1] For ease of reference, when citing to the Amended Complaint, the Court refers to the pagination of the electronic document as viewable on ECF.

Fischer, 2012 WL 2847910, at *2-4 (S.D.N.Y. July 11, 2012), Report and Recommendation adopted by 2012 WL 4849130 (S.D.N.Y. Oct. 12, 2012). The Court specified that Defendants could renew their motion if discovery revealed that Liner had not in fact been in imminent danger of serious physical injury when he filed this action. Id. at *4.

### 2. Renewed Motion to Revoke IFP Status

Defendants moved to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure on December 20, 2012. Motion to Dismiss (Dkt. No. 46). The Court thereafter dismissed all of Liner's claims for failure to state a claim upon which relief may be granted as against all defendants, except Liner's claim that Wilcox was deliberately indifferent to his medical needs with respect to glaucoma and chronic back pain. Liner v. Fischer, 2013 WL 3168660, at *21 (S.D.N.Y. June 24, 2013), Report and Recommendation adopted by 2013 WL 4405539 (S.D.N.Y. Aug. 7, 2013).

After the parties engaged in discovery on this remaining claim, on March 4, 2014, Wilcox requested permission to renew his motion to revoke Liner's IFP status. See Letter Motion (Dkt. No. 104). The Court directed Wilcox to make a preliminary submission of evidence from the record indicating that Liner had not been in any imminent danger of serious physical injury at the time he filed his lawsuit. See Order dated Mar. 5, 2014 (Dkt. No. 105). In response, Wilcox submitted the declaration of Dr. Karen Schoene, the ophthalmologist who had treated Liner during the period when he had filed his complaint and amended complaint, stating that Liner had not experienced vision loss or ocular health deterioration during this period. Declaration of Karen Schoene ("Schoene Decl.") dated Mar. 14, 2014 (Dkt. No. 107), ¶¶ 16, 26-27. Wilcox also submitted his own declaration, along with relevant medical records, indicating

3

that there had been no loss of vision or risk to Liner's eyes. Declaration of Lawrence Wilcox ("Wilcox Decl.") dated Mar. 14, 2014 (Dkt. No. 108), ¶¶ 19, 23, 31.

On the basis of these submissions, the Court granted Wilcox leave to renew his motion, see Order dated Mar. 24, 2014 (Dkt. No. 110), and Wilcox so moved, with supporting papers, on April 4, 2014. See Second Motion to Revoke Plaintiff's IFP Status (Dkt. No. 112); Memorandum of Law in Support of Second Motion to Revoke ("Def. Mem.") (Dkt. No. 113); Supplemental Declaration of Lawrence Wilcox dated Apr. 4, 2014 ("Wilcox Supp. Decl.") (Dkt. No. 115); Declaration of Assistant Attorney General Kruti Dharia dated Apr. 4, 2014 ("Dharia Decl.") (Dkt. No. 114). In the meantime, according to the Department of Corrections and Community Supervision ("DOCCS") website, Liner was released from incarceration on April 16, 2014 and he has since written the Court advising that he is out of prison. *See* Letter dated Apr. 3, 2014 (Dkt. No. 117).[2] He filed an affirmation in opposition to the motion on April 21, 2014 ("Pl. Opp.") (Dkt. No. 121), along with attachments including medical notes.[3] Wilcox filed a reply brief on May 15, 2014 ("Def. Reply") (Dkt. No. 123).

---

[2] See Inmate Information, available at http://nysdoccslookup.doccs.ny.gov.

[3] The Court received three other submissions from Liner in relation to Wilcox's renewed motion. In the first, a letter dated April 3, 2014 (Dkt. No. 119), Liner evidently objected to the Court's granting Wilcox leave to renew the motion to revoke. The Court explained that such an objection was not yet ripe and should be raised once this Report and Recommendation on the disposition of the motion is issued. Order dated April 11, 2014 (Dkt. No. 120), at 1. Liner also submitted two near-identical letters dated April 14, 2014 requesting a two-week extension for Liner to submit a "replication" to the motion (Dkt. Nos. 120, 122). As Liner has since submitted opposition papers to the motion, these applications are moot and the Clerk of the Court should be directed to close them on the docket.

4

## B. Liner's Allegations

### 1. Treatment of Liner's Glaucoma

Liner, who is 54 years old, alleges that he has had glaucoma since 2006. Am. Compl., 10. He asserts that an "eye specialist" prescribed him "three bottles" of eye medication, but from approximately late 2010 until December 14, 2012, he received only two from his prison custodians. Id. He does not contend that he was denied access to medications called Lumigen and Acular. Transcript of Joshua Liner Deposition ("Liner Tr."), attached as Exhibit A to Dharia Decl., 49-50. However, Liner states that, despite the fact that his eye specialist told him that he required "Refresh" eye drops in order to treat his glaucoma, he was denied access to these drops. Id.

According to Liner, when he received the three bottles, his vision would improve, but when he was denied the medication, it would deteriorate. Am. Compl, 10. Liner alleges that his glaucoma is a "very serious medical issue" from which he has already suffered "blur [sic] vision" and could "lose his vision." Id. at 13. Liner further alleges that, when he was transferred to Downstate Correctional Facility to attend court proceedings, he was denied his eye medication altogether on March 4-6, 2011; July 30-31, 2011; and March 23-27, 2012. Id. at 5, 20.[4]

Wilcox counters that, from December 2010 until the end of 2012, Dr. Schoene, an ophthalmologist contracted by DOCCS to provide eye care to inmates, treated Liner while he was incarcerated at various DOCCS facilities. Schoene Decl. ¶¶ 4-5; Wilcox Decl. ¶ 9. Schoene states that Liner has open-angular glaucoma and has a history of traumatic iritis/uveitis, meaning that he had suffered an injury that caused eye inflammation. Schoene Decl. ¶ 7. She

---

[4] As Wilcox points out, he was employed at Lakeview, with no indication in the record that he was ever responsible for Liner's treatment at Downstate. Def. Reply, 4-5.

recommended that Liner take Lumigan and Acular for his conditions and, if needed, Refresh eye drops for dry eyes. Schoene Decl. ¶¶ 8-10, 18; Wilcox Decl. ¶¶ 10-11. According to Wilcox and Schoene, Refresh is a non-medicated, over-the counter lubricating eye drop; is not used to treat glaucoma, which is not related to dry eyes; and an absence of Refresh does not lead to deterioration of vision. Schoene Decl. ¶ 22; Wilcox Decl. ¶¶ 2, 12.

Moreover, Wilcox reports that under the DOCCS health services policy, an outside specialist can only recommend, rather than dictate, treatment for an inmate. Wilcox Decl. ¶ 14. A member of the DOCCS health staff must review the recommendations and approve the treatment plan. Id. Wilcox was responsible for Liner's medical care while Liner was incarcerated at Lakeview. Id. at ¶ 3. Wilcox states that he did not order Refresh eye drops for Liner because Refresh is not used to treat glaucoma and Liner did not have any inflammation or significant dry eyes that warranted the need for Refresh eye drops. Id. at ¶¶ 20-21. Wilcox further affirms that Liner's vision did not change as a result of not receiving Refresh during the relevant period. Id. at ¶¶ 20, 22.

### 2. Liner's DOCCS Grievance

Liner filed a grievance on April 26, 2012, three days after filing his amended complaint in this case, alleging that he was being denied the eye drops recommended for him. DOCCS Inmate Grievance Form, attached as Exhibit A1 to Pl. Opp. DOCCS personnel denied Liner's grievance after determining that the eye drops he demanded were not medically necessary. See Statement from Superintendent signed May 8, 2012, attached as part of Exhibit D to Wilcox Decl. Karen Gray, a registered nurse and "Lakeview employee that frequently examined Plaintiff during the period alleged in the lawsuit," Wilcox Decl. ¶ 28, wrote in a memo dated April 29, 2012 that Liner: "does NOT have a diagnosis of 'dry eye' and non-medicated

6

moisturizing drops would defeat the purpose of his medication which is essential to his vision. These non-medicated eye drops are not medically indicated and would wash away his medicated eye drops." Karen Gray Memorandum ("Gray Memo"), attached as part of Exhibit D to Wilcox Decl.

## II. DISCUSSION

### A. Liner's IFP Status Should Be Revoked Because He Has Accumulated Three Strikes and Did Not Face Imminent Danger of Serious Physical Injury at the Time He Filed His Complaint

The PLRA's three strikes provision governing prisoners' IFP eligibility states:

> In no event shall a prisoner bring a civil action . . . if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[5] An imminent danger is one "existing at the time the complaint is filed." Malik v. McGinnis, 293 F.3d 559, 563 (2d Cir. 2002). A danger "that has dissipated by the time a complaint is filed" is not sufficient, and the complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts." Pettus v. Morgenthau, 554 F.3d 293, 296, 298 (2d Cir. 2009). "In deciding whether such a nexus exists," a court should consider "(1) whether the imminent danger of serious physical injury . . . allege[d] is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would

---

[5] Although Liner was released from prison in April 2014, the "three strikes" provision still applies to this action because the complaint was filed while Liner was incarcerated. See Harris v. City of New York, 607 F.3d 18, 21-22 (2d Cir. 2010) ("Had Congress intended that the three strikes rule would no longer apply once a prisoner had been released, it would have written the statutory provision differently.")

7

redress that injury." Id. at 298-99. Although the feared physical injury must be "serious," courts "should not make an overly detailed inquiry into whether the allegations qualify for the exception." Chavis v. Chappius, 618 F.3d 162, 169 (2d Cir. 2010) (quoting Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007)); see also Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003) ("[Section] 1915(g) is not a vehicle for determining the merits of a claim . . . . [T]o fine-tune what is 'serious enough' to qualify for the exception . . . would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim.").

It is well-established that pro se complaints such as Liner's must be interpreted "to raise the strongest arguments that they suggest." Harris, 607 F.3d at 24 (citations omitted). Nonetheless, "that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Accordingly, the "court may find that a complaint does not satisfy the 'imminent danger' exception," even if raised by a pro se litigant, "if the complainant's 'claims of imminent danger are conclusory or ridiculous.'" Chavis, 618 F.3d at 170 (quoting Ciarpaglini, 352 F.3d at 331).

As the Court concluded in its previous review of Liner's federal litigation history, there is no doubt that Liner has accumulated the three strikes necessary to revoke his IFP status. Liner, 2012 WL 2847910, at *2-4. While at that time Liner's allegations sufficiently raised a question as to an imminent danger of serious physical injury, namely loss of his eyesight, subsequent information provided to the Court has revealed that no such threat ever existed. The only eye treatment that Liner alleges Wilcox denied him at Lakeview was nonprescription Refresh moisturizing drops. Def. Mem., 5 (citing Liner Tr., 49-50). According to Liner, "[a]fter

8

speaking with several medical employees," he believed "dry eyes can develop severe problems for a glaucoma patient," Pl. Opp., 16, and an optometrist told him that "Refresh Tears were necessary," id. at 20. However, Wilcox presents credible evidence from medical professionals who treated Liner supporting Wilcox's own medical opinion that Refresh moisturizing drops were not required for Liner's glaucoma, which is unrelated to dry eyes, and that a lack of Refresh drops would not result in any deterioration of Liner's vision. See, e.g., Schoene Decl. ¶¶ 8-10, 18, 22; Gray Memo. Indeed, according to Lakeview's Karen Gray, Refresh drops would have been counterproductive as they would have washed away Liner's other, glaucoma-treating medication. See Gray Memo.

Liner denies Gray ever examined his eyes and dismisses her as "just a nurse," Pl. Opp., 20, but in the face of the professional medical opinions offered by Wilcox, Liner's response is unpersuasive. Similarly, Liner's argument that he also received care for his eyes from other optometrists whose opinions might potentially support his contentions is merely speculative. Id. at 17. For instance, Liner points to a consultation with Dr. Mallouk Abdel, id., but as Wilcox highlights, this appointment occurred on January 11, 2010, well before Liner filed this action, and the purpose of that visit was solely to obtain a new prescription for corrective lenses. Def. Reply, 4.

In sum, there was no "nexus between the imminent danger" Liner alleged at the time of his complaint and his claims of deliberate indifference, because there was simply no danger. Pettus, 554 F.3d at 298. Liner's allegation that denial of the Refresh drops would result in even minimal harm was at best, "speculative and hypothetical," and thus insufficient to trigger the imminent danger exception. Jackson v. Fischer, No. 07 Civ. 1279 (TJM), 2009 WL 396424, at

9

*3 (N.D.N.Y. Feb. 17, 2009) (internal citation omitted). Consequently, Liner's IFP status should be revoked under § 1915(g).

## B. Liner Must Either Fully Pay the Filing Fee or Make a Renewed IFP Application

If Liner's IFP status is revoked, he would be able to maintain this action only if he can satisfy the filing fee requirement, which he could do in one of two ways. First, he could pay the filing fee of $350 in full. See 28 U.S.C. § 1914(a).[6] Alternatively, if he cannot pay, Liner could file an IFP application under 28 U.S.C. § 1915(a)(1), just as any other non-incarcerated litigant (not being subject to the three strikes provision) satisfying the relevant criteria would be eligible to do. See McGann v. Commissioner, Soc. Sec. Admin., 96 F.3d 28, 30 (2d Cir. 1996) ("A released prisoner may litigate without further prepayment of fees upon satisfying the poverty affidavit requirement applicable to all non-prisoners."). The Second Circuit has clarified that if a prisoner, after bringing a barred IFP action, is subsequently released and "can establish his eligibility [for IFP] status," he should "like any non-incarcerated litigant . . . be excused from paying the filing fee." Harris, 607 F.3d at 24.[7]

Therefore, I recommend that Liner be given 30 days either to pay the filing fee in full or to make an application for IFP status as described by 28 U.S.C. § 1915(a)(1). See, e.g., Jennings

---

[6] Liner paid $39.14 toward the filing fee on April 29, 2014. See ECF Docket Entry for April 29, 2014. Although § 1915(b)(2) allows prisoners proceeding on IFP status to pay the filing fee in monthly installments, with amounts debited from their prison accounts, all other persons not proceeding IFP must fully pay the filing fee in advance. See 28 U.S.C. § 1914(c); Local Civil Rule 1.7(a).

[7] There may be some question as to whether a litigant is permitted to apply for IFP status in the middle of litigation, as opposed to when initially filing the action. However, the IFP statute states that a "court of the United States may authorize" not only the "commencement," but "prosecution" of any suit without prepayment of the filing fee upon an adequate showing of inability to pay. 28 U.S.C. § 1915(a)(1). In other words, the statutory language does not limit consideration of an IFP application to when the applicant initially files the lawsuit.

10

v. Fed. Bureau of Prisons, No. 11 Civ. 1973 (JBW) (JO), 2011 WL 6934764, at *6 (E.D.N.Y. Nov. 17, 2011) (plaintiff whose IFP status revoked for three strikes given 30 days to pay fee or have suit dismissed), Report and Recommendation adopted by 2011 WL 6936354 (E.D.N.Y. Dec. 30, 2011); Mason v. Nitti-Richmond, No. 09 Civ. 7307 (JGK), 2010 WL 2595108, at *3 (S.D.N.Y. June 25, 2010) (same); Partee v. Connolly, No. 08 Civ. 4007 (NRB), 2009 WL 1788375, at *4 (S.D.N.Y. June 23, 2009) (plaintiff given 60 days). If Liner fails to follow one of these options, I recommend that his sole remaining claim against Wilcox be dismissed.

### III. CONCLUSION

For the foregoing reasons, I recommend that defendant Wilcox's motion to revoke Liner's IFP status be granted. Liner should be required either to pay the Court's filing fee in full or to file an amended IFP application within 30 days, or this action should be dismissed.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &

Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010). If Liner does not have access to cases cited herein that are reported on Westlaw, he should request copies from counsel for Defendant. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
June 25, 2014

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been mailed to:**

Joshua Liner
3050 Park Ave., Apt. 14F
Bronx, New York 10451